Filed 3/16/23

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GABRIELA LOPEZ,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>LA CASA DE LAS MADRES,<br><br>     Defendant and Respondent. | A163133<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-18-565637) |

Gabriela Lopez filed the underlying action for employment discrimination and wrongful termination against La Casa de Las Madres (La Casa). La Casa is a non-profit organization that provides services to women and children who are victims of domestic violence. Lopez worked for La Casa at various times between 2002 and 2017. In 2014, she accepted the position of shelter manager at La Casa's residential shelter for domestic violence victims. In September 2016, Lopez gave birth to a baby girl. Thereafter she did not return to work due to events that gave rise to this action. Following a bench trial, the court entered judgment in favor of La Casa. On appeal, Lopez contends the trial court misapplied provisions of the Fair Employment and Housing Act (FEHA) that require an employer to provide reasonable accommodations for a pregnancy-related condition. (Govt. Code, § 12940 et

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of "DISCUSSION" parts I.B, I.D, and II.

1

seq.; subsequent statutory references are to this code.)  We affirm the judgment.

In the published portion of our decision, we observe there are no California cases articulating the elements of a pregnancy discrimination claim under section 12945, subdivision (a)(3)(A) (section 12945(a)(3)(A)). Drawing from the statutory language and applicable regulatory law, as well as pertinent FEHA case law, we conclude a cause of action under section 12945(a)(3)(A) requires proof that:  (1) the plaintiff had a condition related to pregnancy, childbirth, or a related medical condition; (2) the plaintiff requested accommodation of this condition, with the advice of her health care provider; (3) the plaintiff's employer refused to provide a reasonable accommodation; and (4) with the reasonable accommodation, the plaintiff could have performed the essential functions of the job.  Here, the trial court applied a correct understanding of these elements and, contrary to plaintiff's contentions otherwise, properly placed the burden on plaintiff to prove that she had a condition related to pregnancy and that she was able to perform the essential functions of her job with reasonable accommodation.  (See e.g. *Green v. State of California* (2007) 42 Cal.4th 254, 262, 264 (*Green*).)

In the unpublished portion of this opinion, we reject Lopez's argument that she proved La Casa engaged in an unlawful employment practice under section 12945 and section 12940 by failing to accommodate Lopez's pregnancy-related disability.

## BACKGROUND

### I.  Lopez's Claims

In June 2018, Lopez filed her operative first amended complaint, in which she alleged the following material facts:  In April 2016, Lopez notified La Casa of her pregnancy and that her expected due date was in September.

She was placed on modified work duty a few months before her due date, and "[s]everal" weeks before her due date she was placed off work due to conditions or symptoms relating to her pregnancy. After giving birth, Lopez experienced complications and provided La Casa with periodic certifications relating to her condition. During this period, Lopez alleged, La Casa began sending Lopez harassing communications, failed to engage in an interactive process to determine if Lopez's disability could be accommodated, and refused to provide two "modest" accommodations suggested by Lopez's doctor. Lopez attempted to convince La Casa to allow her to return to work, but her efforts were "rebuffed," and ultimately, she was forced out of her job "due to normal complications experienced after her pregnancy." Lopez alleged further that she applied for work elsewhere but was denied a job because La Casa misrepresented the reasons for Lopez's termination.

Lopez incorporated her factual allegations into nine causes of action, the first six of which alleged violations of the FEHA: (1) pregnancy discrimination (§ 12940, subd. (a)); (2) harassment because of pregnancy (§ 12940, subd. (j)); (3) failure to prevent discrimination and harassment (§ 12940, subd. (k)); (4) disability discrimination (§ 12940, subd. (h)); (5) failure to accommodate (§ 12940, subd. (m)); and (6) failure to engage in an interactive process (§ 12940, subd. (n)). Lopez's other claims were for (7) wrongful termination, (8) intentional infliction of emotional distress, and (9) preventing future employment by misrepresentation.

In November 2018, La Casa was granted summary adjudication of four of Lopez's claims, which rulings are not at issue in this appeal. What remained were causes of action for pregnancy discrimination and failure to prevent discrimination, disability discrimination, failure to accommodate a

3

disability, and wrongful termination. In March and April 2021, a court trial was held to resolve Lopez's remaining causes of action.

## II. The Trial Evidence

The trial court received numerous exhibits into evidence and heard testimony from Lopez and four management-level employees of La Casa. We use the trial court's statement of decision as our primary source in summarizing the evidence, quoting pertinent passages as appropriate.[1]

In December 2014, Lopez was hired as La Casa's shelter manager. Her duties included supervising approximately 10 of La Casa's 32 employees: a cook; a facilities worker; four or five program advocates; two case managers; and two overnight crisis counselors. The shelter manager and her subordinates, aside from the cook and facilities worker, interact directly with the domestic-violence victims who come to the shelter for help. When Lopez held this position, she was expected to work 30 hours a week at the shelter, plus 10 hours on administrative tasks, and to always be on call. Lopez was also responsible for covering shifts when a subordinate was absent, whether by arranging for another employee to fill in or covering the shift herself.

The shelter manager handles emergency situations and is responsible for delivering "domestic-violence services 24/7." The location of the shelter is confidential because the residents are in danger and escaping violent personal relationships. The residents themselves can also be dangerous. For example, some victims experience "murder/suicidal ideations," and some

---

[1] Lopez did not object to the trial court's tentative statement of decision which was subsequently adopted by the court and incorporated into a judgment in favor of La Casa. "The statement of decision provides the trial court's reasoning on disputed issues and is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law." (*Slavin v. Borinstein* (1994) 25 Cal.App.4th 713, 718.)

4

bring firearms to the shelter. La Casa provides counseling to all shelter staff due to "secondary trauma," and La Casa's trial witnesses all confirmed the stressful nature of working at the shelter. Lopez testified that she "did not generally find the work to be stressful."

In late February 2016, La Casa learned that Lopez was pregnant. La Casa's human resources manager, Ms. Arias, advised Lopez of her pregnancy-disability rights in a letter dated April 7. Those rights included four months of pregnancy-disability leave and a concurrent 12-week " 'baby-bonding' " leave.

On August 16, 2016, Lopez began her pregnancy-disability leave pursuant to the advice of her doctor. The following day, Arias confirmed in writing that Lopez's return-to-work date was November 8. While Lopez was on leave, her shelter-manager duties were covered by "several" people, including La Casa's executive director, Ms. Black, and Lopez's direct supervisor, Ms. Bergson. Arias and others covered Lopez's administrative duties. Arias testified that "this 'pitching in' coverage was not sustainable indefinitely."

Lopez's leave was extended beyond November 8, 2016, pursuant to a series of certifications from Lopez's doctor. When La Casa extended Lopez's leave to December 16, Arias reminded Lopez that her four-month pregnancy-disability leave would then have concluded. Thereafter, La Casa received a work-status report from Kaiser, which stated that Lopez should not work from December 17, 2016 until January 14, 2017. By December 17, "Lopez had received the full 4 months of [pregnancy-disability leave] required by statute," which included the concurrent "12 weeks of baby-bonding leave provided by La Casa."

5

On December 20, Arias notified Lopez that La Casa would treat the work-status report from Kaiser as a "request for accommodation under FEHA." Over the course of the following month, Lopez submitted three versions of a form questionnaire entitled "Instructions to Health Care Provider," all signed by Ms. Campion, who identified herself as a social worker at Kaiser specializing in mental health. We use the date of Campion's signature to distinguish among these forms.

On a form dated January 3, 2017, Campion reported that Lopez had a " 'moderate-severe' " disability that affected her ability to perform her job by limiting her from engaging in activities that are " 'stress producing or require sustained attention,' and those that 'require the making of important or significant decisions.' " Campion stated that this disability necessitated two modifications to Lopez's work duties: " '1) time off to allow patient to continue mental health [treatment], both groups and individual therapy 2) flexible/shortened workdays if patient finds nature of the work or stress of the work overwhelming and triggering of severe anxiety/depressive symptoms.' " On a section of the form inquiring how long these limitations would be necessary, Campion stated " 'It is unknown,' " and when asked to provide a phone number for follow-up questions, Campion stated, "NA, patient had to sign Kaiser release of information and completing this form was the only authorized action."

La Casa made a determination that it could not accommodate the limitations that Campion proposed. It could provide time off for therapy, but could not function indefinitely without a shelter manager. Nor could that job be "performed without making significant decisions and facing stressful situations at unpredictable times."

On January 6, 2017, Arias notified Lopez that La Casa was unable to accommodate the limitations proposed by Campion. Instead, La Casa offered to extend Lopez's leave until January 14, and upon her return to work to assign her to a "Data Entry Specialist position," which had flexible hours and did not involve stressful tasks. The position paid an hourly wage, which was less pay than Lopez received as a shelter manager, but Lopez was offered higher pay than others who had filled the position. This data-entry position was offered as a "temporary accommodation," with the expectation that Lopez would return to her shelter management role. Arias testified that she told Lopez during a phone conversation that the data-entry position would be temporary. Moreover, Lopez knew that the position was being offered to her as a temporary accommodation because the same offer had previously been accepted by three of Lopez's subordinates, while they were out on disability leave.

Lopez advised La Casa she was not interested in the data-entry position and that she was able to return to her role as shelter manager. Lopez submitted another health care provider form, signed by Campion on January 11, 2017. This partially completed form contained the following statement: " 'Advised by patient to just complete modification section for employer.' " In answer to a question about proposed modifications, Campion stated, " 'Modifications recommended include time off to continue individual therapy sessions and group therapy.' " Campion reported that it was "unknown" how long modifications would be necessary.

La Casa advised Lopez that the January 11 form was incomplete and asked Lopez to submit a complete updated form. Lopez submitted another form from Campion dated January 26, 2017. Campion stated that she had

7

not seen Lopez in a month because Lopez's insurance had lapsed.[2]  Therefore, Campion was unable to assess the severity of Lopez's disability, whether Lopez was able to perform job duties, or the duration of any job limitations. After Lopez submitted the January 26 form, she did not respond to "further repeated inquiries" from La Casa.

On February 6, 2017, La Casa sent a letter to Lopez stating that La Casa considered Lopez to have "elected to discontinue her employment." That same day, Lopez went to La Casa's administrative office to talk to the executive director without an appointment, but Ms. Black was not there. Arias testified that Lopez was angry, threw her keys on Arias's desk, and stormed away, at which point she was considered a former employee.  Lopez testified that she left her keys with Arias because she thought she had been terminated, but she acknowledged that La Casa never asked her to turn in her keys.  Lopez never stated that she resigned or submitted a written resignation and no one at La Casa told Lopez she was terminated.

### C.  The Trial Court's Findings

The trial court found that Lopez failed to carry her burden of proving, by a preponderance of the evidence, one or more element of each claim she pursued at trial.

---

[2]  Lopez was advised that she was required to pay her portion of her health-insurance premiums while she was on leave, but failed to "timely pay those amounts and never paid them in full."  La Casa paid Lopez's premiums through December 31, 2016.  Lopez was also advised that after her pregnancy-disability leave expired, her health care coverage would end on December 31 unless she maintained that coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA).  Lopez did not exercise her COBRA option.

### 1. Pregnancy Discrimination and Failure to Prevent Discrimination

At trial, Lopez based her pregnancy discrimination claim on section 12945(a)(3)(A), which makes it unlawful "[f]or an employer to refuse to provide reasonable accommodation for an employee for a condition related to pregnancy, childbirth, or a related medical condition, if the employee so requests, with the advice of the employee's health care provider." The trial court found that Lopez failed to establish three elements it considered essential to this claim: that she (1) "had a condition related to pregnancy"; (2) "could perform the essential functions of her job"; and (3) "was denied a reasonable accommodation," as requested on the advice of a health-care provider.

Regarding the first finding, there was evidence that after Lopez had her baby and exhausted her pregnancy-disability leave, she sought an extension of her leave, but the basis for that extension was not established at trial. No medical professional testified, no medical records were offered into evidence, and Lopez "repeatedly objected" to evidence regarding the "medical condition" that formed the basis of her claim. The forms Campion signed did not contain a diagnosis and, although they assert a mental-health related disability, do not so much as mention pregnancy. Arias testified that La Casa was unaware of the reason Lopez sought to extend her leave. Lopez testified that after her daughter was born, she felt sad and depressed, attended therapy and was given medication, which, the court found, suggested that Lopez may have had post-partum depression, but Lopez was impeached with evidence that she was depressed and experiencing stress before her pregnancy leave began. For all of these reasons, the court concluded that Lopez failed to establish that the condition for which she sought an accommodation was pregnancy related.

Even assuming that La Casa "inferred" Lopez was suffering from pregnancy-related depression, Lopez failed to establish that "she could perform the essential functions of her job with a reasonable accommodation," the court found. The court based this finding on evidence that Campion had "advised against activities that produced stress and that required making important decisions," and that the shelter-manager job "was inherently stressful and required quick decisions that sometimes meant the difference between life and death." In reaching this conclusion, the court found that Lopez's testimony that she did not find the duties of the shelter manager to be stressful was not credible.

Finally, the court found that Lopez failed to prove that she was denied a reasonable accommodation. The court found that La Casa would have allowed Lopez time off to attend therapy, and that a "flexible or shortened workday" if Lopez found her work stressful was not a reasonable accommodation. The court based this ruling on evidence that La Casa had discussed options that would have enabled them to accommodate this second suggestion of Campion's, including hiring a " 'shadow' shelter manager" to step in if Lopez had to leave work due to stress or anxiety. La Casa had concluded this solution was "unworkable" for multiple reasons, including the cost of paying two people to do the same job, and the confusion for staff of having two managers. La Casa was also concerned that effective communication would be critical for a shadow manager to succeed and Lopez had a documented history of poor communication with her immediate supervisor, Ms. Bergson. During the period Lopez was on leave, Bergson had assumed many of Lopez's duties, with assistance from others, but that accommodation could not be sustained indefinitely, the court found.

The court also based its ruling on evidence that La Casa offered Lopez the temporary assignment of a data-entry position, which the court found was a reasonable accommodation, and that Lopez told Arias she would rather quit than take that position. The court also found no evidence of a discriminatory motive by La Casa, but rather that "La Casa expected Ms. Lopez to return to her job as a shelter manager and made numerous efforts to effect that result."

Because Lopez failed to prove pregnancy discrimination, her related claim for failing to prevent discrimination necessarily failed, the trial court found. (Citing *Trujillo v. North City Transit Dist.* (1998) 63 Cal.App.4th 280 (*Trujillo*).)

### 2. Disability Discrimination

Lopez alleged that La Casa committed a different FEHA violation by terminating Lopez's employment because of her disability. Section 12940, subdivision (a) (section 12940(a)) makes it unlawful to discriminate against any person because of a physical or mental disability, and the trial court found that clinical depression and post-partum depression are mental disabilities covered by the FEHA. (§ 12926, subd. (j)(1).) To establish discrimination based on a disability, the court found, Lopez was required to prove the following elements: (1) she suffers from a disability; (2) she is otherwise qualified to do her job, with or without an accommodation; and (3) she suffered an adverse employment action because of her disability. (Citing *Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 886.) The court found that Lopez failed to prove this claim because, assuming that she suffered from depression, she did not prove that she was otherwise qualified to perform the shelter-manager job, given her need to avoid stressful duties.

11

### 3. Failure to Accommodate Disability

Lopez's fifth cause of action was for violating the FEHA by failing to accommodate Lopez's disability. Section 12940, subdivision (m) (section 12940(m)) makes it unlawful for an employer to fail "to make reasonable accommodation for the known physical or mental disability of an . . . employee." The trial court found that the elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff can perform essential job functions of the position; and (3) the employer failed reasonably to accommodate the plaintiff's disability. (Citing *Hernandez v. Rancho Santiago Community College Dist.* (2018) 22 Cal.App.5th 1187, 1193–1194.) Re-affirming its prior findings, the court concluded that Lopez did not carry her burden of proving the second and third elements of this claim.

### 4. Wrongful Termination

Lopez's final claim was for wrongful termination in violation of public policy, a claim premised on La Casa's alleged violation of the FEHA. The trial court found this claim failed because La Casa did not violate the FEHA.

## DISCUSSION

Lopez contends the judgment must be reversed because she proved that La Casa's refusal to grant the modifications to her work duties requested by Campion violated two distinct provisions of the FEHA—section 12945 and section 12940—and, therefore, the trial court must reconsider whether Lopez was wrongfully terminated. "In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and

12

we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)

## I. Pregnancy Discrimination Under Section 12945

Lopez first contends that the trial court applied the wrong test for evaluating a pregnancy discrimination claim based on section 12945, and that she satisfied all requirements for proving this claim. La Casa counters that (1) Lopez should not be permitted to rely on section 12945 because she invoked that provision for the first time at trial and, in any event, (2) section 12945 was properly applied. We reject La Casa's first contention but agree with the second.

### A. Statutory Overview

Pregnancy discrimination is an unlawful employment practice under provisions of the FEHA that prohibit discrimination on the basis of sex, disability, and pregnancy-related conditions. Discrimination based on the fact that a person is pregnant, has given birth, is breastfeeding, or has a related medical condition is a form of sex discrimination, prohibited by section 12940(a). (§ 12926, subd. (r); see e.g., *Badih v. Myers* (1995) 36 Cal.App.4th 1289.) And discrimination based on the fact that a person suffers from pregnancy-related depression is a form of disability discrimination, which is also prohibited by section 12940(a). (§ 12926, subd. (j).) Moreover, section 12945 (the statute Lopez relies on first) supplements provisions of section 12926 and 12940 that apply to pregnancy-related conditions by delineating additional employment practices that are unlawful "unless based upon a bona fide occupational qualification." (§ 12945, subd. (a) (section 12945(a)).)

13

Section 12945 addresses two distinct protections available to employees with conditions relating to pregnancy.  First, employees disabled by such a condition are entitled to pregnancy-disability leave.  Specifically, it is unlawful for an employer to refuse to allow an employee disabled by a condition related to pregnancy to take a leave of absence for a reasonable period, not to exceed four months.  (§ 12945(a)(1).)  And during the disability leave period, it is unlawful for the employer to refuse to maintain insurance coverage for the employee.  (§ 12945(a)(2).)

Second, section 12945 entitles an employee to accommodation of a condition relating to pregnancy in specified situations.  It is unlawful for an employer to refuse to provide a reasonable accommodation for a condition related to pregnancy, whether or not that condition amounts to a disability, if such accommodation is requested by the employee with the advice of the employee's health care provider.  (§ 12945(a)(2)(A).)  It is also an unlawful employment practice to refuse to accommodate a request temporarily to transfer a pregnant employee to a less strenuous position if the employer has a policy of making such transfers for temporarily disabled employees, or if the temporary transfer is requested with the advice of the employee's physician and such a "transfer can be reasonably accommodated."  (§ 12945(a)(3)(B)–(C).)

In construing these protections afforded by section 12945, we are guided by subdivision (b) of this statute, which states:  "This section shall not be construed to affect any other provision of law relating to sex discrimination or pregnancy, or in any way to diminish the coverage of pregnancy, childbirth, or a medical condition related to pregnancy or childbirth under any other provision of this part, including subdivision (a) of Section 12940."

14

## B. Lopez Relied on Section 12945 at Trial

As La Casa contends, Lopez did not allege pregnancy discrimination under section 12945 in her complaint. Her first cause of action was for pregnancy discrimination in violation of the FEHA, but her pleaded theory was that "pregnancy was a motivating factor in [La Casa's] decision to terminate [Lopez's] employment and to commit other acts of discrimination against her." Lopez based this claim on section 12940(a) and also cited section 12926, but her complaint did not cite section 12945. Moreover, when the superior court denied La Casa summary adjudication of Lopez's pregnancy discrimination claim it did not base its ruling on section 12945 or reference this statute in its order.

Nevertheless, Lopez's theory at trial was that La Casa discriminated against her due to a pregnancy-related condition by denying her reasonable accommodation in violation of section 12945(a)(3)(A). As best we can determine, La Casa did not object to Lopez pursuing this distinct theory at trial. Moreover, the record shows that neither party objected to the statement of decision, which frames our appellate review. Thus, we reject La Casa's contention that Lopez is precluded from relying on section 12945 in arguing that she proved her claim for pregnancy discrimination. However, Lopez fails to show that the trial court's decision as to this particular claim is unsupported by the law or the evidence.

## C. The Elements of Lopez's Discrimination Claim

Lopez argues the trial court committed an error of law by placing the burden on Lopez to prove that (1) she had a condition related to pregnancy, and (2) she could otherwise perform the essential functions of the shelter-manager position. According to Lopez, these two elements do not apply to a

15

claim for pregnancy discrimination that is premised on a violation of section 12945(a)(3)(A).

The parties cite no California case that delineates the elements of a discrimination claim under section 12945. However, federal cases evaluating alleged violations of section 12945(a)(3)(A) use essentially the same test employed by the trial court in the present case. (*Graves v. Pau Hana Group, LLC* (E.D.Cal., Nov. 8, 2013, No. 2:13-CV-01278-JAM-EFB) 2013 U.S.Dist.Lexis 161303, at p. *15; see also *Gonzales v. Marriott International, Inc.* (C.D. Cal. 2015) 142 F.Supp.3d 961, 969 (*Gonzales*) [collecting cases].) Lopez acknowledges this fact, but nevertheless contends that requiring her to prove the two elements listed above was inconsistent with the plain language of section 12495(a)(3)(A) and the interpretation of this provision adopted by the Fair Employment and Housing Commission (FEHC), which promulgates regulations implementing the FEHA.[3] On the contrary, we conclude the language of the statute and FEHC regulations defeat Lopez's arguments.

The language of section 12945(a)(3)(A) requires a successful plaintiff to prove at least three things: (1) that her employer "refuse[d] to provide a reasonable accommodation," (2) "for a condition related to pregnancy, childbirth, or a related medical condition," (3) when the employee "so request[ed], with the advice of [her] health care provider." (§ 12945(a)(3)(A); see *Gonzales*, *supra*, 142 F.Supp.3d at p. 969.) A " '[r]easonable accommodation' of an employee affected by pregnancy" is defined by FEHC

---

[3] Regulations implementing the FEHA are found in California Code of Regulations, title 2, sections 11006 et seq. (subsequent references to regulations are to these FEHA regulations). Courts give substantial deference to the FEHC's interpretation of the FEHA unless the agency's interpretation "is 'clearly erroneous or unauthorized.' " (*Kelly v. Methodist Hospital of So. California* (2000) 22 Cal.4th 1108, 1118.)

regulation as "any change in the work environment or in the way a job is customarily done that is effective in enabling an employee to perform the essential functions of a job." (Regs., § 11035(s); see also *Gonzales*, at p. 970.) Thus, a fourth element the successful plaintiff must prove is that, with the requested accommodation, she is able "to perform the essential functions of" the job in question. (Regs., § 11035(s).)

Lopez contends she was not required to prove she had a condition related to pregnancy because section 12945(a)(3)(A) does not actually state that a plaintiff must "prove" this fact. She contends further that the FEHC imposes no such burden on a plaintiff, citing regulation 11050. Lopez's construction of section 12945(a)(3)(A) ignores express language in the statute requiring that individuals seeking reasonable accommodation must have "a condition related to pregnancy, childbirth, or a related medical condition." The FEHC has determined that this phrase "means a physical or mental condition intrinsic to pregnancy or childbirth." (Regs., § 11035(d); see also Regs., § 11040 [addressing reasonable accommodations made by employees "affected by pregnancy"].) Lopez's theory also ignores basic principles of tort law requiring a private plaintiff to prove that a statute upon which she relies has actually been violated. (See *Trujillo, supra,* 63 Cal.App.4th at pp. 286–288.) And Lopez overlooks that regulation section 11050 on its face allows employers to require medical certification of the advisability of a "reasonable accommodation . . . *because of pregnancy*." (Italics added.) Nothing about this regulation excuses a plaintiff from proving all elements of her claim for pregnancy discrimination under section 12945(a)(3)(A).

Lopez is no more successful with her second challenge to the trial court's legal test. Section 12945(a)(3)(A) does not explicitly address whether a person claiming she was denied a reasonable accommodation must be able,

17

with accommodation, to perform essential job functions, but the statute does apply exclusively to accommodations that are *reasonable*, which the FEHC has defined as those accommodations that "enabl[e] an employee to perform the essential functions of a job." (Regs., § 11035(s).) This FEHA regulation is reflective of pertinent case law, which defines a reasonable accommodation as " 'a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.' " (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1010; see also *Kaur v. Foster Poultry Farms LLC* (2022) 83 Cal.App.5th 320, 345 (*Kaur*); *Nadaf-Rahrov* v. *Neiman Marcus Group*, *Inc.* (2008) 166 Cal.App.4th 952, 973–978 (*Nadaf-Rahrov*).)

Our Supreme Court has held that "an adverse employment action on the basis of disability is not prohibited [by the FEHA] if the disability renders the employee unable to perform his or her essential duties, even with reasonable accommodation." (*Green*, *supra*, 42 Cal.4th at p. 264, italics omitted; see also *Sanchez v. Swissport*, *Inc.* (2013) 213 Cal.App.4th 1331, 1337 (*Sanchez*).) And the burden of proof is on the plaintiff to prove this point: "[I]n order to establish that a defendant employer has discriminated on the basis of disability in violation of the FEHA, the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation." (*Green*, at p. 262.) Following *Green*, another division of this court held, in the specific context of a claim for reasonable accommodation of a physical or mental disability under section 12940(m), that "the plaintiff bears the burden of proving he or she was able to perform the essential functions of the job with accommodation." (*Nadaf-Rahrov*, *supra*, 166 Cal.App.4th at p. 978.) Lopez points to no statutory language

18

suggesting this same rule does not apply when a plaintiff bases her discrimination claim on an alleged violation of section 12945.

Lopez contends this requirement does not apply when a plaintiff with a pregnancy-related condition claims she was denied a reasonable accommodation under section 12945 because the protections afforded by section 12945(a)(3)(A) must be construed "more broadly and differently than Section 12940." We agree that section 12945 affords important protections to employees affected by pregnancy, over and above the protections of section 12940. These additional protections include a right to up to four months of pregnancy-disability leave (§ 12945(a)(1)), and a right to temporary transfer to a less strenuous job if such a "transfer can be reasonably accommodated" (§ 12945(a)(3)). Section 12945(a)(3)(A) also protects a right to reasonable accommodation for a condition associated with pregnancy or childbirth, even when this condition does not rise to the level of a formally recognized disability. Section 12945(a)(3)(A) is, in this regard, broader than section 12940(m), which addresses an employer's obligation to accommodate "disability." But none of these provisions entitles an employee to a job she cannot perform.

La Casa overreaches in contending that once an employee has exhausted her pregnancy-disability leave, she has no further right to an accommodation under section 12945. The employer's obligation to accommodate pregnancy-related conditions in section 12945(a)(3)(A) is not limited to the specific accommodations discussed in other subdivisions of section 12945. Thus, a plaintiff who elects to rely on section 12945 is not limited to arguing that she was denied four months of pregnancy-disability leave or a temporary alternative work assignment, but may also allege discrimination based on the failure to provide some other reasonable

19

accommodation of a pregnancy-related condition. However, her burden of proving that she was denied a reasonable accommodation within the meaning of the FEHA is not diminished by any language we find in section 12945. Nor do FEHC regulations entitle her to a specific form of accommodation. A modified work schedule "may" be a reasonable accommodation in an appropriate case, regulation section 11065(p) instructs, but that does not make it a reasonable accommodation as a matter of law in this case, as Lopez asserts.

Contending that a request for accommodation of a pregnancy-related condition should be treated differently from requests to accommodate other types of disabilities under section 12940, Lopez points out that the FEHC has recognized that "[i]n general, pregnancy accommodation can be expected to be less costly than average disability accommodations because no special equipment is usually needed to accommodate a pregnant woman and the accommodation is needed for a short, finite period of time." (Cal. Reg. Notice Register 2012, No. 9-Z (Mar. 2, 2012) at p. 276.)[4] These factors may be relevant to the question whether a request for accommodation of a pregnancy-related condition is reasonable. They do not support Lopez's contention that a plaintiff who claims she was denied a reasonable accommodation under section 12945 should be excused from having to prove that, with accommodation, she was able to perform the essential functions of her job.

---

[4] Lopez requests judicial notice of California Regulatory Notice Register, Register 2012, No. 9-Z. She contends that portions of the notice that discuss 2012 amendment to FEHA regulations are relevant to interpret section 12945. We grant the request only as to portions of the notice document that address FEHA regulations. We find nothing in this material that supports Lopez's construction of section 12945(a)(3)(A).

Lopez also points out that while undue burden is a statutory defense to a failure to accommodate claim brought under section 12940(m), section 12945 contains no reference to this affirmative defense. Lopez fails to explain why this distinction between the two provisions supports her attack on the test the trial court used to evaluate the elements of her pregnancy discrimination claim. Her related argument that the trial court relied on an undue burden defense in concluding that Lopez failed to prove her pregnancy discrimination claim simply misconstrues the statement of decision. When the statement of decision discusses evidence that the options of La Casa "hiring a 'shadow' shelter manager" or continuing indefinitely to rely on other managers to fill in were unworkable, this was in support of findings that Lopez had not proven the elements of her cause of action. Specifically, she had "not met her burden of proving that she could perform the essential functions of her job" or that the requested accommodation of allowing her to leave when the work became too stressful was "reasonable."

Finally, Lopez and La Casa both rely on *Sanchez*, *supra*, 213 Cal.App.4th at p. 1334, a case involving an employee placed on bed rest early in her high-risk pregnancy. The woman was terminated from her job while pregnant and on a temporary leave of absence, and she alleged "she was fired because of her pregnancy, her pregnancy-related disability and/or her requests for accommodations." (*Id.* at p. 1335.) The trial court sustained a demurrer to the plaintiff's complaint, finding she could not state a claim under section 12940 of the FEHA based on pregnancy-related disability because she had received all the disability leave mandated by section 12945. (*Ibid.*) This ruling was reversed on appeal. (*Id.* at p. 1334.)

The *Sanchez* court found that the fact the plaintiff had received four months of disability leave under section 12945 did not preclude her from

alleging viable FEHA-related claims under provisions of section 12940 that prohibit sex discrimination and disability discrimination because section 12945 augments rather than replaces FEHA provisions otherwise applicable to pregnancy-related disability. (*Sanchez*, *supra*, 213 Cal.App.4th at pp. 1338–1339.) Moreover, the fact that the plaintiff had exhausted all available leave under section 12945 did not preclude her from alleging a viable claim under section 12940(m) for denying the reasonable accommodation of an additional, finite leave until the plaintiff gave birth. (*Id*. at p. 1341.) In reaching this conclusion, the court reasoned that the plaintiff had alleged facts sufficient to show that if the employer had granted her request for additional leave until she gave birth, she would then have been able to perform the essential functions of her job. (*Id.* at pp. 1340–1341.)

*Sanchez* is of limited assistance because the plaintiff did not rely on section 12945, so the *Sanchez* court had no occasion to address the elements of a discrimination claim brought under section 12945. Beyond that, the case was before the court of appeal at the pleading stage based on a discrete fact pattern: A pregnant plaintiff who received four months of pregnancy-disability leave was denied additional leave for the finite period until she gave birth. (*Sanchez*, *supra*, 213 Cal.App.4th at pp. 1334–1335.) Contrary to Lopez's appellate argument, *Sanchez* does not demonstrate that the rights conferred under section 12945 are broader or qualitatively more important than rights conferred under section 12940, but instead confirms that these two provisions coexist, neither displacing the other. (*Id*. at pp. 1338–1339.) On the other hand, *Sanchez* does not support La Casa's appellate argument that once an employee receives four months of pregnancy-disability leave, she has no further right to any other accommodation under section 12945. That

issue was never addressed in *Sanchez* since the only accommodation the plaintiff' requested was for an additional period of disability leave pursuant to section 12940(m). (*Id.* at pp. 1334–1335.)

Although *Sanchez* does not address the elements of a pregnancy discrimination claim brought under section 12945, it does confirm the settled principle that "the FEHA does not prohibit an employer from discharging an employee with a physical [or mental] disability or medical condition who 'is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations.' " (*Sanchez*, *supra*, 213 Cal.App.4th at p. 1337.) Thus, *Sanchez* is not authority for Lopez's contention that she was not required to show that she was otherwise qualified to perform the essential functions of her job.

In summary, we find no support for Lopez's construction of section 12945(a)(3)(A) in the statutory language, FEHC regulations or pertinent case law, and accordingly we reject her contention that the test the trial court used to evaluate her pregnancy discrimination claim requires us to reverse the judgment.

**D. Challenges to the Trial Court's Factual Findings**

Lopez makes two additional arguments regarding the trial court's findings relating to Lopez's section 12945 claim.

First, Lopez contends that certifications from her medical provider were sufficient as a matter of law to establish that she had a condition related to pregnancy. In making this argument, Lopez fails to distinguish between certifications from her doctor that pertained to her pregnancy-disability leave and the forms Campion subsequently completed, after Lopez's

23

four months of disability leave ended in December 2016. The disputed issue at trial was whether Lopez had a condition related to pregnancy *after* she completed her disability leave.

As discussed, the trial court found Lopez failed to prove that after her pregnancy-disability leave ended, she had a condition relating to pregnancy. "The substantial evidence standard of review takes on a unique formulation where, as here, 'the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals.' [Citations.] '[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.' [Citation.] Specifically, we ask 'whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*In re S.G.* (2021) 71 Cal.App.5th 654, 671.)

Applying this standard, we conclude that the trial court did not err in finding that Lopez failed to carry her burden of proof. The first form Campion submitted stated that Lopez had a mental health-related disability, but did not indicate that the disability was related to pregnancy. And three weeks later, when Campion signed the last (incomplete) form on behalf of Lopez, she acknowledged not knowing whether Lopez continued to suffer from a disability. Beyond that, Lopez did not produce any medical evidence pertaining to her diagnosis. She testified that she felt sad after the birth of her daughter, but other evidence showed that she was depressed before she went on disability leave.

Moreover, the trial court did not base its ruling exclusively, or even primarily, on the failure of proof regarding the nature of Lopez's condition

after mid-December.  Instead, the court found that even if the evidence supported an inference Lopez's apparent depression was pregnancy related, she failed to prove "that she could perform the essential functions of her job and that she was denied a reasonable accommodation."

Turning to Lopez's second factual argument, she contends that the "modest" accommodations La Casa refused to provide were reasonable "as a matter of law."  The reasonableness of a requested accommodation is a factual determination made by the trier of fact.  (*Kaur*, *supra*, 83 Cal.App.5th at p. 346; see also *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 953–954.)  The determination is "made on a case-by-case basis, taking into consideration such factors, including but not limited to, the employee's medical needs, the duration of the needed accommodation, the employer's legally permissible past and current practices, and other such factors, under the totality of the circumstances."  (Regs., § 11040.)

The first accommodation evaluated by the trial court was Lopez's request for pregnancy-disability leave.  The court did not decide whether this was a reasonable accommodation because it found that La Casa granted the request and provided Lopez with four months of pregnancy-disability leave, the maximum leave required by section 12945(a)(1).  Lopez does not dispute this finding on appeal.

Instead, Lopez contends that La Casa could "easily" have left Lopez's position vacant or granted her an additional period of leave to "allow her to recuperate."  Lopez posits that an additional, finite leave to recover from a disability constitutes a reasonable accommodation under section 12940(m).  (Citing *Sanchez*, *supra*, 213 Cal.App.4th at p. 1338; *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 226.)  We find no evidence this issue was raised at trial but even if was, Lopez fails to show that La Casa denied a

25

request for an additional, finite leave.  The last work-status report from Kaiser indicated that Lopez should not work until January 14, 2017, but instead of seeking a leave for that discrete period, Lopez requested other accommodations so that she could return to work.

As discussed in our background summary, the two modifications to the duties of a shelter manager that Lopez requested were time off to attend therapy and "flexible/shortened workdays" so that Lopez could leave work if she experienced stress or anxiety.  These requests were made pursuant to Campion's recommendation that Lopez not engage in activities that were stressful, required sustained attention, or required her to make important or significant decisions.  On appeal, Lopez attempts to show error by asserting that only the first of these modifications was at issue.

Lopez contends that her request for time off to attend therapy was reasonable as a matter of law.  The problem with this argument is that the trial court found "La Casa could and would have accommodated the time off for therapy."  In other words, Lopez was not denied this accommodation.  Lopez insists the request to attend therapy was the only accommodation she was seeking at the time of her "termination."  Putting to one side the question whether Lopez was terminated or instead resigned, we reject this argument.  The evidence shows that after Lopez was told that the two modifications Campion proposed were not a reasonable accommodation that would enable Lopez to perform as shelter manager, she attempted to undo Campion's recommendation by submitting additional forms.  But the second and third forms had only incomplete information, and in signing them Campion did not withdraw or revise her initial recommendation that, for an indefinite period, Lopez would require a flexible or shortened work schedule so that she could leave work when she experienced stress.  The second form

26

had almost no information on it, only the accurate but incomplete statement that "modifications recommended *include* time off to continue individual therapy sessions and group sessions." (Italics added.) And the third form frankly recounted that Campion had no current information about Lopez's medical condition.

Lopez also contends that a request for a modified work schedule is a reasonable accommodation as a matter of law. This conclusory assertion is inadequate to merit review of the finding that in this case the modification of "flexible/shortened workdays" was not a reasonable accommodation. (See e.g., *Thee Aguila, Inc. v. Century Law Group, LLP* (2019) 37 Cal.App.5th 22, 30–31 [appellant has the " 'responsibility to support claims of error with citation and authority; this court is not obligated to perform that function on appellant's behalf'"].) Because the shelter manager needed to be available to make important decisions at any time and in an inherently stressful environment, the court found that a modification permitting Lopez to leave work whenever she experienced stress or anxiety was not a reasonable accommodation. Lopez does not dispute the evidence upon which the court relied or otherwise show that the flexible or shortened workday recommended by Campion was a reasonable accommodation as a matter of law in this case.

## II. Failure to Accommodate Under Section 12940

Lopez contends that even if she did not prove her pregnancy discrimination claim under section 12945(a)(3)(A), she proved that La Casa violated section 12940(m) by refusing to modify the job duties of a shelter manager so Lopez could return to that position.

Lopez's primary argument is that the trial court failed properly to analyze the second element of her reasonable accommodation claim, which required her to prove she could perform the essential job functions of the

27

shelter-manager position. Lopez argues first, that the court misconstrued "stress" as an essential job function despite the fact that stress is not a fundamental job duty. It is Lopez who misconstrues the court's discussion of the essential job functions requirement, which was an element of all three of the alleged FEHA violations that Lopez pursued at trial. The court found that the essential functions of the shelter-manager job included making "critical decisions in an inherently stressful environment," making on-the-spot decisions in emergency situations that could "arise at any time," and being "on call" to address a crisis as it arises. These findings are supported by the testimony of La Casa employees.

Lopez contends that the court failed to consider whether Lopez could have performed the shelter-manager job with the modifications that Campion proposed. As Lopez's cited authority reflects, the pertinent issue was whether Lopez was unable to perform " 'essential duties even with reasonable accommodations.' " (*Sanchez*, *supra*, 213 Cal.App.4th at p. 1341.) Here, substantial evidence supports the trial court's finding that the modification of a flexible schedule, allowing Lopez to leave work to avoid stress or anxiety, was not a reasonable accommodation. By the same token, this modification would not have enabled Lopez to perform her essential duties; it would have excused her from having to perform them, thus requiring some other employee to do the shelter-manager job.

Lopez further contends that the trial court erred by finding that the offer of a temporary assignment to a data-entry position was a reasonable accommodation. Again her arguments are unavailing. She contends, for example, that giving an employee a temporary job is not a reasonable accommodation as a matter of law. (Citing Regs., § 11068(d)(3).) The data-entry position was not a temporary job, but a position that was offered as a

28

temporary re-assignment until Lopez recovered from her unspecified disability.  Lopez also contends that, absent circumstances not applicable here, an employer may not "transfer an employee affected by pregnancy over her objections to another position."  (Regs., § 11039(a)(1)(G).)  La Casa could not force Lopez to accept a job transfer to a position she found objectionable, but that does not mean a temporary assignment to the data-entry position would not have been a reasonable accommodation of the disability that prevented Lopez from performing the essential duties of a shelter manager.  In any event, the finding that the data-entry position was a reasonable accommodation was not necessary to the court's finding that Lopez failed to prove her failure-to-accommodate claim.  This claim failed because Lopez did not carry her burden of proving that she could perform the essential job functions of the shelter-manager position even with a reasonable accommodation.

Finally, Lopez contends La Casa failed to prove its undue burden defense.  Section 12940(m) provides that the employer's obligation reasonably to accommodate the known disability of an employee "shall" not be construed "to require an accommodation that is demonstrated by the employer . . . to produce undue hardship."  But this is an affirmative defense that comes into play only after a plaintiff has established that a specific requested accommodation "[was] reasonable and thus required in the first place." (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1227.)  Here, as we have discussed, Lopez failed to prove she was denied a reasonable accommodation.

## DISPOSITION

The judgment is affirmed.  Costs are awarded to respondent.

29

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
PETROU, J.

Trial Court:        City & County of San Francisco Superior Court

Trial Judge:        Hon. Rochelle C. East

Counsel:            Lohr Ripamonti, Jason S. Lohr for Plaintiff and Appellant

                    Saber Law Group, Shirley C. Wang, Andrew Mailhot, and
                        Riley Harris (Balestreri) for Defendant and Respondent

*Lopez v. La Casa De Las Madres* (A163133)